UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

RUSSELL MERRIWEATHER,

       Petitioner,

vs.                          Case No. 3:11-cv-458-J-39JBT

SECRETARY, DOC, et al.,

       Respondents.

_____

**<u>ORDER</u>**

## I.  STATUS

Petitioner Russell Merriweather filed a Petition for Writ of Habeas Corpus (Petition) (Doc. 1) under 28 U.S.C. § 2254 and a Memorandum of Law in Support of Petition for Writ of Habeas Corpus (Memorandum) (Doc. 2).  The Petition challenges a 2008 state court (Duval County) conviction for sale, delivery, or possession of cocaine with intent to sell or deliver within 1000 feet of a church (Count II).  <u>Id</u>. at 1.  Petitioner raises two grounds for habeas relief.  The Court will address each ground, <u>Clisby v. Jones</u>, 960 F.2d 925, 936 (11th Cir. 1992), <u>Dupree v. Warden</u>, 715 F.3d 1295, 1298 (11th Cir. 2013), but no evidentiary proceedings are required in this Court.

This cause is before the Court on Respondents' Amended Answer to Petition for Writ of Habeas Corpus (Response) (Doc. 29).[1]  The

_____

[1] Respondents calculate that the Petition is timely, Response at 2-4, and the Court accepts this calculation.

Exhibits (Appendix) are found in the Exhibits to Answer to Petition for Writ of Habeas Corpus (Doc. 25).[2] Petitioner filed an Amended Reply to Response Memorandum (Reply) (Doc. 30). See Order (Doc. 11).

## II.   STANDARD OF REVIEW

In this habeas proceeding, the Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA). "By its terms [28 U.S.C.] § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to th[re]e exceptions." Harrington v. Richter, 131 S.Ct. 770, 784 (2011).  The exceptions are: (1) the state court's decision was contrary to clearly established federal law; or (2) there was an unreasonable application of clearly established federal law; or (3) the decision was based on an unreasonable determination of the facts.  Id. at 785.

There is a presumption of correctness of state courts' factual findings unless rebutted with clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  This presumption applies to the factual determinations of both trial and appellate courts.  See Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003).

---

[2] The Court hereinafter refers to the Exhibits contained in the Appendix as "Ex."  Where provided, the page numbers referenced in this opinion are the Bates stamp numbers at the bottom of each page of the Appendix.  Otherwise, the page number on the particular document will be referenced.

### III.   INEFFECTIVE ASSISTANCE OF COUNSEL

In his Petition, Petitioner claims he received the ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution.   In order to prevail on this Sixth Amendment claim, he must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 688 (1984), requiring that he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different).

### IV.   PROCEDURAL HISTORY

The record shows the following transpired.   Petitioner was charged by a second amended information with sale or delivery of cocaine (Count I) and sale, manufacture, delivery or possession with intent to sell, manufacture or deliver cocaine within 1000 feet of a church (Count II).   Ex. 2 at 16-17.   On January 22 and January 23, 2008, the trial court conducted a jury trial on Count II.[3]   Ex. 3.   The jury returned a verdict of guilty of sale or

_____

[3] Count II of the Second Amended Information states:

> RUSSEL WADE MERRIWEATHER on September 12, 2007, in the County of Duval and the State of Florida, did sell, manufacture, or deliver, or possess with intent to sell, manufacture or deliver a controlled substance named or described in Section 893.03(2)(a)4, Florida Statutes, to-wit: Cocaine; in, on, or within 1000 feet of a physical place for worship at which a church or religious organization

delivery of cocaine as charged. <u>Id</u>. at 309. The jury found "that the sale or delivery took place within a thousand feet of a church." <u>Id</u>.; Ex. 4.

On January 31, 2008, Petitioner filed a Motion for New Trial. Ex. 5 at 41-42. The trial court denied the motion. <u>Id</u>. at 43; Ex. 6 at 13. The court conducted a sentencing proceeding on February 27, 2008. Ex. 6. The prosecutor stated that she was filing a habitual offender notice. <u>Id</u>. at 10. The court found Petitioner met the statutory criteria for classification as a habitual felony offender. <u>Id</u>. at 12. The maximum possible sentence was "a first punishable by life[.]" <u>Id</u>. at 14. The court adjudicated Petitioner guilty of sale or delivery of cocaine within a thousand feet of a church, and also adjudicated Petitioner a habitual felony offender. <u>Id</u>. at 16. The court sentenced Petitioner to a term of thirty years in prison as a habitual felony offender. <u>Id</u>. The February 27, 2008 Judgment reflects the judgment for Count II, a first degree crime. Ex. 7 at 54-55. The February 27, 2008 Sentence is for a prison term of thirty years as a habitual felony offender. <u>Id</u>. at 57-59.

---

regularly conducts religious services, contrary to the provisions of Section 893.13(1)(e)1, Florida Statutes.

Ex. 2 at 16.

Petitioner appealed his conviction. Ex. 8. He also filed a Motion to Correct Sentence Pursuant to Rule 3.800(b)(2), Ex. 9, which was denied. Ex. 10.

Petitioner raised one ground on direct appeal:

> Whether the offense of sale or delivery of cocaine is a strict liability offense and, if so, whether the sentence of thirty years in prison imposed therefor violates due process?

Ex. 11 at i. The state answered. Ex. 12. Petitioner replied. Ex. 13. The First District Court of Appeal affirmed per curiam on March 30, 2009. Ex. 14. The mandate issued on June 8, 2009. Id. Petitioner sought rehearing, and the appellate court denied rehearing. Ex. 15.

Petitioner submitted a pro se Motion for Post-Conviction Relief, filed pursuant to Rule 3.850, Fla. R. Crim. P., on December 23, 2009, pursuant to the mailbox rule. Ex. 16. In ground I, Petitioner claimed he received the ineffective assistance of trial counsel. Id. at 5. He supported ground I in his Memorandum of Law in Support of Motion for Post-Conviction Relief. Id. at 33-36.

More specifically, in ground I, Petitioner claimed his counsel was ineffective for conceding Petitioner's guilt during closing argument in violation of his Constitutional rights under the Fifth, Sixth, and Fourteenth Amendments. Id. at 33. In the State's Response to Petitioner's Motion for Post-Conviction Relief, the state countered Petitioner's claim and asserted that Petitioner's

counsel did not concede guilt during closing argument.  Ex. 17 at 53.  The state explained:

> The Petitioner offers the unsupported conclusion that defense counsel conceded guilt in closing statements resulting in a guilty verdict against him.  The Petitioner's mere conclusory allegations without proof of deficiency or actual proof of prejudice do not constitute ineffective assistance of counsel. Reaves, 593 So.2d 1150, 1151 (Fla. 1st DCA 1992); See also Delaughter, 641 So.2d 932, 933 (Fla. 2d DCA 1994).  During closing arguments, defense counsel presented an explanation for why the Petitioner may have spoke [sic] to Detective Goethe; defense counsel argued that if Petitioner was involved at all, he was only a "lookout" for Martin.  (R. 273).  Defense counsel's remarks about Petitioner possibly being a "lookout" were not an admission of guilt and had nominal impact, if any impact at all.  (R. 273).  The use of the term "lookout" does not rise to the level required by Strickland especially where defense counsel used the word to minimize and rebut the State's argument.
>
> Defense counsel's closing statements were part of the strategy to explain the Petitioner's conduct and refute the arguments made by the State.  Strategic or tactical decisions by counsel will not be second-guessed.  Buford v. State, 492 So.2d 355, 359 (Fla. 1986); Gonzalez v. State, 579 So.2d 145, 146 (Fla. 3d DCA 1991).  In this case, Petitioner's counsel chose to describe the Petitioner as a "lookout" in order to offer an alternative theory as to Petitioner's behavior.  (R. 273).  Counsel will not be declared ineffective simply because a particular strategy was unsuccessful or did not produce petitioner's desired result. Sireci v. State, 469 So.2d 119, 120 (Fla. 1985).  Defense counsel does not implicitly or explicitly concede guilt on behalf of the Petitioner at any time in closing statements. (R. 266-77).  The strategy used by defense

> counsel   does   not   constitute   ineffective
> assistance of counsel.
>
> The   Petitioner   offers   the   "lookout"
> statement  made  by  defense  counsel  without
> substantiating  how  the  statement  prejudiced
> him.   Furthermore,  the  Petitioner  does  not
> prove  by  a  reasonable  probability  that  had
> defense  counsel  not  made  the  statement  he
> would   have   fared   better   at   the   trial.
> Referring  to  the  Petitioner  as  a  "lookout"  was
> not  a  concession  of  guilt  by  defense  counsel,
> but  a  strategy  which  did  not  prejudice  the
> Petitioner   or   result   in   an   unfair   trial;
> therefore,  the  Petitioner  fails  on  both  the
> performance  prong  and  the  prejudice  prong  of
> the <u>Strickland</u> test.

Ex. 17 at 54-56.

In its June 17, 2010, Order Denying Motion for Post Conviction Relief, the circuit court denied the Rule 3.850 motion for post conviction relief "for the reasons set forth in the State's Response to Defendant's Motion for Post Conviction filed herein." Ex. 18 at 66.  Petitioner appealed the trial court's decision.  Ex. 19.  The First District Court of Appeal affirmed per curiam on October 4, 2011.  Ex. 20.  The First District Court of Appeal denied rehearing on November 19, 2010.  Ex. 21.  The mandate issued on December 7, 2010.  Ex. 20.

### V.   FINDINGS OF FACT AND CONCLUSIONS OF LAW

### GROUND ONE

The first ground of the Petition is: "[t]he offense of sale or delivery of cocaine is a strict liability offense; therefore, the sentence of thirty years in prison violates due process."  Petition at 4.  Ground one of the Petition presents a due process claim

asserting that "a criminal offense lacking a *mens rea* element may not be punished as a felony; it is punishable only as a misdemeanor." Memorandum at 2. Petitioner presented this same claim on direct appeal. Ex. 11. The state appellate court affirmed per curiam without opinion. Ex. 14.

The appellate court was presented with the due process claim. Although there is not an opinion that explains the state appellate court's rationale for its ruling, one is not required. All that is required is a rejection of the claim on its merits. Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S. 906 (2003); Peoples v. Campbell, 377 F.3d 1208, 1227 (11th Cir. 2004), cert. denied, 545 U.S. 1142 (2005). This Court must next consider the "contrary to" and "unreasonable application" components of the statute. "It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide." Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001), cert. denied, 537 U.S. 978 (2002).

Under AEDPA, deference is owed to this decision. Therefore, this claim will be addressed applying the deferential standard for federal court review of a state court adjudication. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor was the adjudication based on an unreasonable determination of the facts in

light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Alternatively, if the state court's adjudication of this claim is not entitled to deference under AEDPA, the claim is, nevertheless, without merit. An explanation follows. The Due Process Clause of the Fourteenth Amendment requires the State to prove beyond a reasonable doubt each element of the offense charged. Thompson v. Nagle, 118 F.3d 1442, 1448 (11th Cir. 1997) (citing Jackson v. Virginia, 443 U.S. 307, 314 (1979)), cert. denied, 522 U.S. 1125 (1998). First, this Court reviews the state law history, which is the foundation for Petitioner's claim:

> In Chicone, the supreme court held that the offense of possession of a controlled substance included not only knowledge that the substance was in the defendant's possession, but also knowledge of the illicit nature of the substance. See id. at 738.[4] Subsequently, in Scott v. State, 808 So.2d 166 (Fla. 2002), the supreme court determined that, regardless of the defense raised or the affirmative defenses asserted, a defendant is entitled to an instruction on the element of guilty knowledge in a possession case because it is an element of the crime. See id. at 170. The Scott court stated that failure to give the requested instruction is not harmless error. Id. In McMillon v. State, 813 So.2d 56 (Fla. 2002), Chicone was extended to cases where the defendant was charged with sale of cocaine.

> Both Chicone and Scott were addressed, however, by the legislature's enactment of

---

[4] Chicone v. State, 684 So.2d 736 (Fla. 1996).

section 893.101, Florida Statutes (2002), which states the following:

> (1) The Legislature finds that the cases of <u>Scott v. State</u>, Slip Opinion No. SC 94701 [,808 So.2d 166] (Fla. 2002) and <u>Chicone v. State</u>, 684 So.2d 736 (Fla. 1996), holding that the state must prove the defendant knew of the illicit nature of a controlled substance found in his or her actual or constructive possession, were contrary to legislative intent.
>
> (2) The Legislature finds that knowledge of the illicit nature of a controlled substance is not an element of any offense under this chapter. Lack of knowledge of the illicit nature of a controlled substance is an affirmative defense to the offenses of this chapter.
>
> The effective date of the statute is May 13, 2002 and it may not be applied retroactively. <u>See</u> <u>Quaintance v. State</u>, 845 So.2d 294 (Fla. 1st DCA 2003) (For any offense occurring prior to May 13, 2002, an essential element of the crime of possession of an illegal substance was knowledge of the illicit nature of the substance); <u>see</u> <u>also</u> <u>Blunt v. State</u>, 831 So.2d 770, 772 (Fla. 4th DCA 2002) (May 13, 2002 law may not be applied retroactively to a charge arising before its effective date).

<u>Sandifer v. State</u>, 851 So.2d 788, 789-90 (Fla. 4th DCA 2003).

As recently found by the United States District Court for the Southern District of Florida, a challenge to the constitutionality of this state narcotics conviction "on the ground that *Fla. Stat.* §893.13 charges strict liability crimes, thereby eliminating the *mens rea* element is meritless." <u>Alvarez v. Crews</u>, No. 13-60664-CIV, 2014 WL 29592, at *6 (S.D. Fla. Jan. 3, 2014). Indeed, the Eleventh

- 10 -

Circuit and the Supreme Court of Florida rejected the holding in Shelton v. Sec'y, Dep't of Corr., 802 F.Supp.2d 1289 (M.D. Fla. 2011) (Shelton I), finding "Florida's Comprehensive Drug Abuse Prevention and Control Act, Chapter 893, *Fla. Stat.,* facially constitutional." Alvarez, 2014 WL 29592, at *6 (citing Shelton v. Sec'y, Dep't of Corr., 691 F.3d 1348 (11th Cir. 2012) (Shelton II) and State v. Adkins, 96 So.3d 412 (Fla. 2012)).

Petitioner, in his November 6, 2012 Reply, suggests the United States Supreme Court may reverse Shelton II or Adkins. Upon review, however, that has not been the case. Shelton v. Sec'y, Dep't of Corr., 691 F.3d 1348 (11th Cir. 2012), cert. denied, 133 S.Ct. 1856 (2013). Of import, neither case has been reversed, vacated, or called into doubt. It should be noted that this Court previously found that Florida's Drug Abuse and Control Law (2002 amendment, which eliminated any *mens rea* requirement) is not facially unconstitutional due to the absence of a *mens rea* requirement. See Harris v. United States, No. 8:11-CV-793-T-30TBM, 2012 WL 1631744, at *2 (M.D. Fla. May 8, 2012) (citing United States v. Bunton, No. 8:10-cr-327-T-30EAJ, 2011 WL 5080307 (M.D. Fla. Oct. 26, 2011) (not reported in F.Supp.2d)) ("[T]his Court has held, contrary to *Shelton* [I]*,* that Section 893.13 is not facially unconstitutional."); Smith v. USA, No. 8:11-cv-1022-T-30EAJ, 2012 WL 868888, at *5 (M.D. Fla. March 14, 2012) (finding the law is not facially unconstitutional).

Petitioner is not entitled to habeas relief on ground one. See Response at 9-11. Petitioner's conviction and sentence of thirty

- 11 -

years in prison does not violate due process of law.  The crime in the instant case occurred on September 12, 2007, Ex. 2 at 16, Second Amended Information, well after May 13, 2002, the effective date of the statute.  Thus, in accordance with Florida law, knowledge of the illicit nature of the substance was no longer an essential element of the crime at the time it was committed in September of 2007.  The jury was instructed accordingly.  Ex. 3 at 292-93.  Of course, "writing of elements into crimes is for the Legislature", not the courts.[5]  McMillon v. State, 813 So.2d 56, 59 (Fla. 2002) (Wells, C.J., dissenting).  Thus, knowledge of the illicit nature of a controlled substance is no longer an element of the offenses of possession, or sale or delivery of a controlled substance, for offenses committed after May 13, 2002.  Section 893.101, Florida Statutes (2002); see Knox v. Sec'y, Dep't of Corr., 3:10-cv-306-J-20TEM, Order (Doc. #19), filed August 11, 2011; Case No. 3:10-cv-306-J-20TEM, Eleventh Circuit's Order (Doc. 25) (denying Knox's motion for a certificate of appealability), dated July 9, 2012.

In the instant case, guilty knowledge is not an element of the offense of sale or delivery of a controlled substance, since Petitioner committed the offense in September, 2007, after the

---

[5] Not only is the Legislature charged with the writing of the elements of crimes, it is also "vested with broad authority to determine intent requirements in defining crimes."  Wright v. State, 920 So.2d 21, 23 (Fla. 4th DCA 2005) (citations omitted). The Florida courts have concluded that "the elimination of the difficult-to-prove element of knowledge of a substance's illicit nature" is rationally related to the strong governmental interest of addressing the drug problem.  Id.

effective date of the amended statute.   Indeed, Petitioner's assertion that the offense of sale or delivery of cocaine is an unconstitutional "strict liability offense" is without merit.  See Williams v. State, 45 So.3d 14 (Fla. 1st DCA 2010) (per curiam) (rejecting petitioner's claim that his sentences are unconstitutional because, by virtue of Florida Statutes § 893.101, his offenses are "strict liability offenses" for which the maximum sentences that can be imposed consistent with due process are no more than one year in jail), rev. denied, 53 So.3d 1022 (Fla. 2011); Wright v. State, 920 So.2d 21, 24 (Fla. 4th DCA 2005) (finding that § 893.101 "does two things: it makes possession of a controlled substance a general intent crime, no longer requiring the state to prove that a violator be aware that the contraband is illegal, and, second, it allows a defendant to assert lack of knowledge as an affirmative defense"), rev. denied, 915 So.2d 1198 (Fla. 2005).

Here, Florida Statutes section 893.101 required only that a matter peculiarly within Petitioner's knowledge - that the substance at issue was illicit - be raised as an affirmative defense rather than proven in the State's case-in-chief.  The offense for which he was convicted (sale or delivery of cocaine) is not a crime entitling Petitioner to a sentence of no more than one year in jail.  Quite to the contrary, Petitioner's thirty-year term of imprisonment, imposed pursuant to Florida Statutes § 775.084, Ex. 6 at 16, Sentencing Transcript, is lawful and does not violate Petitioner's

right to due process of law.  This ground does not warrant federal habeas corpus relief.

**GROUND TWO**

In ground two, Petitioner raises a claim of ineffective assistance of trial counsel.  Ground two is: "[c]ounsel rendered ineffective assistance when she conceded to petitioner's guilt during closing argument in violation of the U.S. Constitution, Amendment Fourteen."  Petition at 5.  In this ground, Petitioner claims his trial counsel was constitutionally ineffective for conceding his "guilt as a principle[.]"  Memorandum at 8.

The circuit court denied the claim of ineffective assistance of trial counsel raised in ground two.  Ex. 18.  The state appellate court per curiam affirmed.  Ex. 20.

Petitioner is not entitled to relief on ground two.  Upon review of the record, the jury in the instant case was charged, in pertinent part, as follows:

> Principals: If the defendant helped another person or persons commit or attempt to commit a crime, the defendant is a principal and must be treated as if he had done all of the things the other person or persons did if, number one, the defendant had a conscious intent that the criminal act be done and, number two, the defendant did some act or said some word which was intended to and which did incite, cause, encourage, assist or advise the other person or persons to actually commit or attempt to commit the crime.  To be a principal the defendant does not have to be present when the crime is committed or attempted.

> Accomplices: You should use great caution in relying on the testimony of a witness who

- 14 -

claims to have helped the defendant commit a
crime. This is particularly true when there is
no other evidence tending to agree with what
the witness says about the defendant. However,
if the testimony of such a witness convinces
you beyond a reasonable doubt of the
defendant's guilt or the other evidence in the
case does so, then you should find the
defendant guilty.

Ex. 3 at 296.

In closing, defense counsel asserted there was lack of evidence
to convict Petitioner. Ex. 3 at 271. She noted that Detective
Raymond Andrew Goethe, as he walked back to his car, was only
watching Petitioner, not the co-defendant, Mr. Dennis Martin. Id.
Counsel argued there was reasonable doubt based on the fact that it
was not known whether Mr. Martin, the co-defendant, put the drugs
on the bench. Id. at 271-72.

In addition, counsel emphasized the conflicts in the evidence.
Id. at 272. Specifically, she pointed to the inconsistencies in
Detective Goethe's testimony and in Mr. Martin's testimony. Id.
Counsel said Detective Goethe testified that Petitioner and Mr.
Martin had a lengthy conversation while Detective Goethe stood back.
Id. Of significance, counsel noted that Mr. Martin said he never
had an extensive conversation with Petitioner. Id. Finally,
counsel argued that Mr. Martin was not honest, asserting that his
testimony did not "mesh with the audio[.]" Id.

During closing, in supporting this contention, counsel
explained:

- 15 -

Detective Goethe testified that Mr. Martin came over pretty quick, that he came over, they had a conversation, the three of them, he stepped back, Mr. Martin and Mr. Merriweather had a lengthy conversation, he [Detective Goethe] came forward again, he was sent to -- Detective Goethe was sent to the car. Mr. Merriweather called him back over.

Ladies and gentlemen, I submit to you that if Mr. Merriweather did call him back over, **it's because he acted as a lookout for Mr. Martin.** Those drugs were on that bench. That is undisputed. We all know the drugs were on the bench. But no one can tell you definitively who put them there. You have to assume, you have to speculate, and that is not proof beyond a reasonable doubt. That does not meet the state's burden to prove my client is guilty. They have given you nothing that would show that my client in the only one possible that could have put the drugs there.

Ex. 3 at 273 (emphasis added).

Counsel continued:

Now, the state says they have. They said no one else was in the area, but that is wrong. Mr. Martin was there. Mr. Martin says he wasn't over by the bench, but we already know Mr. Martin wasn't telling the truth because he didn't tell the truth about the conversations he had with my client. Detective Goethe told us that. We don't know for sure who put the drugs on that bench. And, ladies and gentlemen, that is not proof beyond a reasonable doubt.

Id. at 273-74.

Petitioner asserts that the concessions in the comments made above were the functional equivalent to a guilty plea for the charge under the principal theory and that he was never informed of this strategy nor did he agree to this strategy. See Memorandum at 8.

- 16 -

Petitioner complains that he never agreed to concede his guilt, and the statement referenced above amounted to a complete concession of guilt to the charged offense under the principle theory.

The Supreme Court of the United States, in <u>Florida v. Nixon</u>, 543 U.S. 175, 178-79 (2004), said:

> The Florida Supreme Court erred in applying, instead, a presumption of deficient performance, as well as a presumption of prejudice; that latter presumption, we have instructed, is reserved for cases in which counsel fails meaningfully to oppose the prosecution's case. <u>United States v. Cronic</u>, 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). A presumption of prejudice is not in order based solely on a defendant's failure to provide express consent to a tenable strategy counsel has adequately disclosed to and discussed with the defendant.

The Supreme Court explained:

> An attorney undoubtedly has a duty to consult with the client regarding "important decisions," including questions of overarching defense strategy. <u>Strickland</u>, 466 U.S., at 688, 104 S.Ct. 2052. That obligation, however, does not require counsel to obtain the defendant's consent to "every tactical decision." <u>Taylor v. Illinois</u>, 484 U.S. 400, 417-418, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988) (an attorney has authority to manage most aspects of the defense without obtaining his client's approval). But certain decisions regarding the exercise or waiver of basic trial rights are of such moment that they cannot be made for the defendant by a surrogate. A defendant, this Court affirmed, has "the ultimate authority" to determine "whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." <u>Jones v. Barnes</u>, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983); <u>Wainwright v. Sykes</u>, 433 U.S. 72, 93, n.1, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (Burger, C. J., concurring). Concerning

- 17 -

those decisions, an attorney must both consult
with the defendant and obtain consent to the
recommended course of action.

Nixon, 543 U.S. at 187.

Upon review of the Eleventh Circuit case law, under the
circumstances of the case at bar, the Strickland, standard should
be applied.  For example, in Messer v. Kemp, 760 F.2d 1080, 1090-91
(11th Cir. 1985) (footnotes omitted), cert. denied, 474 U.S. 1088
(1986), the Eleventh Circuit said:

> In regard to closing arguments, Messer
> claims Sawhill conceded his guilt and separated
> himself from the accused.  We have carefully
> reviewed Sawhill's closing argument and find no
> express concession of guilt, and nothing to
> support Messer's contention that he was
> abandoned by his counsel.  If guilt were to
> some degree implied in what Sawhill said, it
> was a weak implication at best, and arguably
> unavoidable in light of the overwhelming
> evidence and stated trial strategy.  This
> situation differs markedly from cases cited in
> appellant's brief where defense attorneys
> expressly conceded or strongly implied the
> guilt of their clients.  See Francis v.
> Spraggins, 720 F.2d 1190, 1193 n.7 (11th Cir.
> 1983) (counsel stated during closing:  "I think
> he went in the house and I think he committed
> the crime of murder probably. . . ."); Young v.
> Zant, 677 F.2d 792, 797 n.10 (11th Cir. 1982)
> (counsel stated:  "Under the evidence of this
> case, I only ask you for life.").  In light of
> the totality of the evidence before the jury,
> we are simply unable to believe that the
> decision reached by the jury "would reasonably
> likely have been different absent the [alleged]
> errors" in Sawhill's closing argument.
> Washington, 466 U.S. at ----, 104 S.Ct. at
> 2069, 80 L.Ed.2d at 699.

The court distinguished cases where there was a complete concession
of guilt (a "surrender of the sword"), which constitutes ineffective

- 18 -

assistance of counsel, and cases where there were statements made constituting a tactical retreat.  <u>Messer</u>, 760 F.2d at 1091 n.6.

In the instant case, the Court has carefully reviewed defense counsel's closing argument and finds no express concession of guilt. There was no "surrender of the sword."  Furthermore, counsel absolutely did not abandon Petitioner.  She vehemently argued that there were conflicts in the evidence and testimony, and that the state had not proved its case beyond a reasonable doubt.  Indeed, Petitioner points to only one brief statement in closing argument, and more importantly, the statement at issue is prefaced with the qualifier "if."

Upon close consideration, counsel's statement that "if Mr. Merriweather did call him back over, it's because he acted as a lookout for Mr. Martin[]" was, at best, a very weak implication. Ex. 3 at 273.  Additionally, the statement must be read in context. Both Mr. Martin and Detective Goethe testified that Petitioner was present in the park and talked to them.  Counsel, in an attempt to explain Petitioner's conduct as described by Detective Goethe and Mr. Martin,[6] and in an attempt to refute the state's closing, argued that Mr. Martin played the bigger role in the interaction with Detective Goethe; Mr. Martin did not testify honestly concerning the

_____

[6] As noted by Respondents, Petitioner did not testify at trial; therefore, the only testimony concerning the events came from the state's witnesses, Detective Goethe and Mr. Martin, and therefore, the testimony that Petitioner called Goethe back to his location remained unrebutted.  Response at 18.

events which took place, as evidenced by Detective Goethe's testimony; Mr. Martin had the opportunity to place the drugs on the bench; and all of these factors combined amounted to reasonable doubt as to Petitioner's guilt. Ex. 3 at 272-73. In addition, counsel argued that Mr. Martin was looking for a light sentence by testifying for the state. <u>Id</u>. at 275. Thus, counsel strongly urged the jury not to believe Mr. Martin's testimony. <u>Id</u>. at 275-76.

Of import, counsel never said Petitioner was guilty of trafficking in cocaine or guilty of aiding and abetting in the trafficking of cocaine. She never conceded or strongly implied Petitioner's guilt. In sum, there was no concession of guilt in the sole remark at issue.

The Court finds counsel's closing argument was not constitutionally deficient. She attacked the weak portions of the state's case and addressed the strong factors. Counsel's performance was well within the wide range of reasonable professional assistance. The first prong of the <u>Strickland</u> test has not been met by Petitioner.

Finally, the presumption of prejudice does not apply.[7]   The actions of defense counsel during closing were not the functional equivalent of a guilty plea.   There was no complete denial of counsel.   There has been no allegation that counsel was not present at a critical stage.   Upon review of the trial record, counsel subjected the prosecution's case to meaningful adversarial testing.   Finally, there were no prejudicial circumstances alleged.

Since the presumption of prejudice does not apply, the Court looks to the second prong of the Strickland test.   In that regard, Petitioner has not demonstrated a reasonable probability that the result of the proceeding would have been different without the statement of his attorney during closing argument.   There was strong evidence of Petitioner's guilt.   The defense strategy of picking holes at the weaknesses in the state's case was not so beyond reason as to suggest Petitioner was deprived of constitutionally effective counsel.   In view of the strong evidence against Petitioner, including the testimony of the witnesses and the audio recording of the actual transaction, counsel's performance was reasonable and does not constitute a constitutional violation.

---

[7] There are four situations where courts have found *per se* ineffectiveness: (1) where there has been a complete denial of counsel; (2) where the accused is denied the presence of counsel at a critical stage; (3) when counsel entirely fails to subject the prosecution's case to meaningful adversarial testing; and, where circumstances are so prejudiced against the defendant, competent counsel could not render effective assistance.   United States v. Cronic, 466 U.S. 648, 659-61 (1984).

## CERTIFICATE OF APPEALABILITY

If Petitioner appeals, the undersigned opines that a certificate of appealability is not warranted. See Rule 11, Rules Governing Section 2254 Cases in the United States District Courts. This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the

- 22 -

record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.   The **Clerk of the Court** shall enter judgment accordingly and close this case.

3.   If Petitioner appeals the denial of his Petition, **the Court denies a certificate of appealability**.  Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 7th day of April, 2014.

_____
BRIAN J. DAVIS
United States District Judge

sa 4/4
c:
Russell Merriweather
Counsel of Record

- 23 -